## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| MARK KOKOSZKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYBOY ENTERPRISES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-10302-BAF-RSW<br><br>Hon. Bernard A. Friedman<br><br>Mag. Judge R. Steven Whalen |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  January 31, 2020

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com
            pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801
E-Mail:  fhedin@hedinhall.com

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.　　Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.　　Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.　　Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

**Plaintiff's Answer: Yes.**

4.　　Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND .................................................................................4

     A.      Michigan's Preservation of Personal Privacy Act ...............................4

     B.      Plaintiff's Allegations.................................................................4

     C.      The Litigation History and Settlement Discussions............................5

III.    TERMS OF THE SETTLEMENT ..........................................................7

     A.      Class Definition........................................................................7

     B.      Monetary Relief........................................................................8

     C.      Release....................................................................................8

     D.      Notice and Administration Expenses ..............................................8

     E.      Service Award ...........................................................................9

     F.      Attorneys' Fees and Expenses......................................................9

IV.     THE PROPOSED CLASS IS APPROPRIATE FOR
      CERTIFICATION FOR SETTLEMENT PURPOSES .................................9

     A.      The Numerosity Requirement is Satisfied .........................................10

     B.      The Commonality Requirement is Satisfied ......................................11

     C.      The Typicality Requirement is Satisfied...........................................13

     D.      The Adequacy Requirement is Satisfied...........................................15

     E.      The Proposed Settlement Class Meets the Requirements
        of Rule 23(b)(3)........................................................................17

        1.      Common Questions Predominate .............................................18

        2.      A Class Action Is A Superior Mechanism..................................19

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS
        COUNSEL ..............................................................................................21

VI.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        APPROPRIATE ......................................................................................22

        A.      The Rule 23(e)(2) Factors Weigh In Favor Of
                Preliminary Approval ...............................................................23

        B.      The Sixth Circuit's *UAW* Factors Weigh In Favor Of
                Preliminary Approval ...............................................................25

                1.      There Is No Risk Of Fraud Or Collusion (*UAW*
                        Factor 1) ........................................................................25

                2.      Litigation Through Trial Would Be Complex,
                        Costly, And Long (*UAW* Factor 2) ............................26

                3.      Discovery Has Advanced Far Enough To Allow
                        The Parties To Resolve The Case Responsibly
                        (*UAW* Factor 3) ...........................................................27

                4.      Plaintiff Would Face Real Risks If The Case
                        Proceeded (*UAW* Factor 4) .......................................28

                5.      Class Counsel And The Class Representative
                        Support The Settlement (*UAW* Factor 5) ..................29

                6.      The Reaction Of Absent Class Members (*UAW*
                        Factor 6) ........................................................................29

                7.      The Settlement Serves The Public Interest (*UAW*
                        Factor 7) ........................................................................29

VII.    THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND
        SUBSTANCE ..........................................................................................30

VIII.   CONCLUSION ........................................................................................32

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................... passim

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
133 S. Ct. 1184 (2013) ....................................................................9, 19

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007)..............................................................15

*Calloway v. Caraco Pharm. Labs., Ltd.*,
287 F.R.D. 402 (E.D. Mich. 2012) .....................................................20

*Coulter-Owens v. Time, Inc.*,
308 F.R.D 524 (E.D. Mich. 2015) ............................................... passim

*Curry v. SBC Comm'ns, Inc.*,
250 F.R.D 301 (E.D. Mich. 2008) .......................................................11

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006)...............................................................11

*Date v. Sony Electronics, Inc.*,
2013 WL 3945981 (E.D. Mich. July 31, 2013) ....................................14

*Davidson v. Henkel Corp.*,
302 F.R.D. 427 (E.D. Mich. 2014) ......................................................11

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ...........................................16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)............................................................................30

*Gilkey v. Central Clearing Co.*,
202 F.R.D. 515 (E.D. Mich. 2001) ......................................................14

*Granada Investments, Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992)..............................................................25

v

*Groover v. Prisoner Transportation Servs., LLC*,
    2019 WL 3974143 (S.D. Fla. Aug. 22, 2019)................................................. 16, 17

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996)......................................................................... 10, 13

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 297 (E.D. Mich. 2001) .......................................................................20

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) .......................................................................18

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................29

*In re Packaged Ice Antitrust Litig.*,
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .....................................................22

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*,
    722 F.3d 838 (6th Cir. 2013).................................................................. 10, 12, 19

*Int'l Union v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................................................15

*Kinder v. Meredith Corp.*,
    2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ...................................... 12, 14, 19, 24

*Leonhardt v. AvrinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)................................................................25

*Little Caesar Enters., Inc. v. Smith*,
    172 F.R.D. 236 (E.D. Mich. 1997) .......................................................................14

*Luczak v. Nat'l Beverage Corp.*,
    2018 WL 9847842 (S.D. Fla. Oct. 12, 2018).......................................................16

*Machesney v. Lar-Bev of Howell, Inc.*,
    292 F.R.D. 412 (E.D. Mich. 2013) .......................................................................18

*McDonald v. Asset Acceptance LLC*,
    296 F.R.D. 513 (E.D. Mich. 2013) .......................................................................10

*Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ............................................................... 12, 17

*Parker v. Time Warner Entertainment Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) ...........................................................................13

*Powers v. Hamilton County Public Defender Com'n*,
    501 F.3d 592 (6th Cir. 2007)......................................................................... 18, 19

*Reese v. CNH America, LLC*,
    227 F.R.D. 483 (E.D. Mich. 2005) .......................................................................13

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976).................................................................................15

*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .....................................................25

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007).......................................................................... passim

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................................. 25, 26

*UAW* v. *Ford Motor Co.*,
    2008 WL 4104329 (2008)......................................................................................29

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013).................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..................................................................................... 11, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................................22

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2010)......................................................................... 19, 21

**STATUTES**

28 U.S.C. § 1715 ........................................................................................................32

M.C.L. § 445.1712 .......................................................................................................4

M.C.L. § 445.1715 ...............................................................................4

**RULES**

Fed. R. Civ. P. 23 ............................................................... passim

Fed. R. Civ. P. 26 ...............................................................................6

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) .......................................22

Newberg on Class Actions (4th ed. 2002) ....................................... 22, 31

## I.    INTRODUCTION

The Settlement negotiated by Plaintiff and Class Counsel in this action represents the best result ever achieved on a per-class member basis in an action brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"). The proposed Settlement creates a $3.85 million non-reversionary cash Settlement Fund, from which every Settlement Class Member (except for those who submit requests for exclusion from the Settlement) will *automatically* receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $110.  The proposed Settlement is the result of a mediator's proposal by Judge Gerald E. Rosen (Ret.), formerly of the Eastern District of Michigan and now a mediator at JAMS (Detroit), and comes after a lengthy pre-filing investigation, efficiently prosecuted litigation, and months of contentious, arm's-lengths negotiations between the Parties, including two full days of mediation with Judge Rosen.  By any reasonable measure, the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

The Court need not evaluate the Settlement in a vacuum, as it is the latest in a string of settlements recently reached in similar PPPA class actions against other magazine publishers.  *See Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279, Dkt. 314 (S.D.N.Y.) (approving class action settlement that paid

1

approximately $98 per claimant); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671, Dkt. 143 (S.D.N.Y.) (approving class action settlement that paid approximately $82 per claimant); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, Dkt. 99 (S.D.N.Y.) (approving class action settlement that paid approximately $109 per claimant); *Perlin v. Time, Inc.*, No. 16-cv-10635, Dkt. 51 (E.D. Mich.) (approving class action settlement that was expected to pay between $25 to $50 per claimant); *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812, Dkt. 87 (S.D.N.Y.) (approving class action settlement that paid approximately $41 per claimant); *Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. 42 (E.D. Mich.) (approving class action settlement that paid approximately $100 per claimant); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, Dkt. 54 (E.D. Mich.) (approving class action settlement that paid approximately $42 per claimant); *Kinder v. Meredith Corporation*, No. 14-cv-11284, Dkt. 72 (E.D. Mich.) (approving class action settlement that paid approximately $50 per claimant).

The proposed Settlement in this case outperforms each of the previously approved settlements cited above, both in structure and per-class member recovery. Unlike the prior PPPA settlements cited above, this Settlement does not require Settlement Class Members to submit claim forms, and instead provides *automatic* cash payments to every class member who does not exclude him or herself. Thus,

unlike in past PPPA settlements where 80%-90% of settlement class members did not submit claim forms and thus did not receive cash payments, in this case every non-excluded Settlement Class member will receive a cash payment upon final approval of the proposed Settlement. Moreover, even though cash payments will be made to every non-excluded Settlement Class Member, the amount of each such payment is still estimated to far exceed the amount of money paid to claiming class members in each of the previous PPPA settlements cited above. Simply put, the automatic, per-class member relief secured by this Settlement marks the best result ever achieved in a PPPA class action – by far.

The strength of this Settlement speaks for itself, and the Court should have no hesitation granting it preliminary approval. Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. and Hedin Hall LLP as Class Counsel; (4) appoint Mark Kokoszki as the Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits A-C to the Settlement Agreement, and direct distribution of the Proposed Notice.

## II.   BACKGROUND

### A.   Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."  Complaint (Dkt. 1) ("Compl"), Ex. A.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

### B.   Plaintiff's Allegations

Playboy Enterprises, Inc. ("Playboy" or "Defendant") is an international media company that publishes *Playboy* magazine.  *See* Compl. ¶ 1.  Plaintiff alleges that between January 30, 2016 and July 30, 2016, Playboy disclosed information related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 7-11, 43-49.  To increase the value of such information, Plaintiff alleges that Playboy traded its customers' protected reading information

4

with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 7, 43-45.  Plaintiff further alleges that Playboy thereafter "enhanced" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then allegedly disclosed the enhanced information to other unrelated third parties for a profit.  *Id.*

Plaintiff further alleges that no matter how consumers subscribed (*i.e.*, via postcard, over the phone, on Playboy's website, or through a subscription agent's website), Playboy's customers never provided consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 7, 47-48.  This is because – during the subscription process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of Playboy's alleged disclosure practices.  *Id.*

### C.    The Litigation History and Settlement Discussions

Plaintiff filed this class action lawsuit on January 30, 2019 in the United States Court for the Eastern District of Michigan.  (Dkt. 1).  In response to the Complaint, on April 1, 2019, Playboy filed an Answer denying the allegations generally and raising 14 affirmative defenses.  (Dkt. 7).  On April 24, 2019, the Parties filed a Joint Case Management Statement.  (Dkt. 10).  During that same

time, the Parties commenced discovery, which included the exchange of written discovery and initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). Declaration of Joseph I. Marchese In Support Of Plaintiff's Unopposed Motion For Preliminary Approval ("Marchese Decl.") ¶¶ 6-7; 9-10.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.* ¶ 11. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Gerald E. Rosen (Ret.), who is a neutral at JAMS in Detroit. *Id.* ¶ 12. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, and Playboy's financial position. *Id.* ¶ 13. Given that the information exchanged would have been, in large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 14. The mediation took place on July 10, 2019 at JAMS's offices in Detroit and lasted the entire day. While the Parties engaged in good faith negotiations, which at all times were in arms' length, they failed to reach an agreement that day. However, the Parties made substantial progress and agreed that further negotiations over the next 60 days would be beneficial. *Id.* ¶ 15.

Thereafter, the Parties continued to negotiate through and agreed to participate in a second mediation with Judge Rosen. *Id.* ¶ 16. The second mediation took place on October 24, 2019 at JAMS's offices in New York City and again lasted the entire day. While the Parties engaged in good faith negotiations, which at all times were at arm's length, they failed to reach an agreement that day. However, at the conclusion of the mediation session, Judge Rosen issued a mediator's proposal to settle the case. *Id.* ¶ 17.

On December 11, 2019, after engaging in continued negotiations through Judge Rosen, the Parties accepted Judge Rosen's mediator's proposal and executed a term sheet. *Id.* ¶ 18.

## III.   TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (the "Settlement" or the "Agreement"), attached as Exhibit 1, are briefly summarized as follows:

### A.   Class Definition

The "Settlement Class" is defined as:

All Persons with a Michigan street address who subscribed to a Playboy Publication to be delivered to a Michigan street address between January 1, 2016 and July 30, 2016, and who did not opt out of Playboy's information sharing service.[1]

---

[1] Excluded from the Settlement are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

7

Agreement ¶ 1.33.

### B.    Monetary Relief

Defendant shall establish a $3.85 million non-reversionary Settlement Fund, from which each Settlement Class Member who does not exclude him or herself shall receive a *pro rata* cash payment, estimated to be approximately $110, after payment of notice and administrative expenses, attorneys' fees, and a service award to the Class Representative.  Agreement ¶¶ 1.35, 2.1.  No portion of the Settlement Fund will revert back Defendant.  *Id.* ¶ 1.35.

### C.    Release

In exchange for the $3.85 million cash payment, Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.28 of the Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information.  *See* Agreement ¶¶ 1.27-1.29 for full release language.

### D.    Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  Agreement ¶¶ 1.31-32, 1.35.

### E.     Service Award

In recognition of his efforts on behalf of the Settlement Class, Defendant has

agreed that Plaintiff Kokoszki may receive, subject to Court approval, a service

award of $5,000 from the Settlement Fund, as appropriate compensation for his

time, effort, and leadership serving as class representative. Defendant will not

oppose any request limited to this amount.  Agreement ¶ 8.3.

### F.     Attorneys' Fees and Expenses

Defendant has agreed that the Settlement Fund may also be used to pay

Class Counsel reasonable attorneys' fees and to reimburse their expenses in this

Action, in an amount to be approved by the Court.  Agreement ¶¶ 1.35, 8.1.  Class

Counsel have agreed to petition the Court for no more than 35% of the Settlement

Fund, and Defendant has agreed not to oppose any request limited to this amount.

*Id.* ¶ 8.1.

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court

must determine that the proposed settlement class is appropriate for certification.

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Class certification

is proper if the proposed class satisfies the numerosity, commonality, typicality,

and adequacy of representation requirements of Rule 23(a).  Fed. R. Civ. P. 23(a);

*see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191

(2013).  Additionally, because Plaintiffs seek certification under Rule 23(b)(3),

they must also demonstrate that common questions of law or fact predominate over

individual issues and that a class action is the superior device to adjudicate the

claims.  *Amchem*, 521 U.S. at 615–16.  District courts are given broad discretion to

determine whether certification of a class action lawsuit is appropriate.  *In re*

*Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838,

850 (6th Cir. 2013).  As explained below, the proposed Settlement Class satisfies

all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Notably, in the only PPPA case to reach a decision on a contested class

certification motion, Judge Steeh granted class certification.  *See Coulter-Owens v.*

*Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015).  Likewise, similar classes of

magazine purchasers were certified for settlement purposes in the other PPPA class

action settlements discussed above.  *See supra* Introduction.  Like the classes in

those cases, the proposed Settlement Class here should be certified.

## A.    The Numerosity Requirement is Satisfied

The numerosity requirement is met when joining such a large number of

plaintiffs in a single suit would be impracticable.  Fed. R. Civ. P. 23(a)(1); *In re*

*Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  Although there is no

fixed numerical threshold for determining impracticability of joinder, a

"substantial amount of members will suffice."  *McDonald v. Asset Acceptance*

*LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013) (citing *Daffin v. Ford Motor Co.*, 458

F.3d 549, 552 (6th Cir. 2006)). Only a reasonable estimate or some evidence of the

number of members in the purported class is required. *Id.*; *see also Curry v.*

*SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class

members is sufficient to satisfy the numerosity requirement); *Davidson v. Henkel*

*Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity

requirement.  According to Defendant's records, the proposed Settlement Class is

comprised of approximately 21,900 persons with a Michigan street address who

subscribed to a Playboy Publication to be delivered to a Michigan street address

between January 1, 2016 and July 30, 2016, and who did not opt out of Playboy's

information sharing service.  Marchese Decl. ¶ 19.  Thus, there is no question that

joinder of all members of the Settlement Class would be impractical and

numerosity is, therefore, satisfied.

### B.   The Commonality Requirement is Satisfied

The second requirement for certification mandates that "there are questions

of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is

satisfied when the claims depend on a common contention, the resolution of which

will bring a class-wide resolution of the claims.  *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011).  The threshold for demonstrating the commonality

requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 582-83.

Here, Plaintiff alleges that the common contention on which the claims of all class members depends is that Playboy disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA. Plaintiff contends that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a PPPA claim. Numerous courts considering settlement classes in the context of PPPA claims have agreed. *See, e.g.*, *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016). Plaintiff contends that the central factual and legal questions in the case can be determined on a class-wide basis using the same evidence regarding Playboy's practices. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532–534 (E.D. Mich. 2015) (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law. *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–534; *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

## C.    The Typicality Requirement is Satisfied

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or

13

course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001).  In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Playboy's disclosure of his subscription information was not a one-off situation unique to him, but rather was part of Playboy's alleged general business practice of disclosing its customers' subscription information to third parties without consent.  Compl. ¶¶ 1-4, 7-11, 43-49.  It is Plaintiff's contention that no matter the person – whether it be Plaintiff or other members of the putative class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  And, because Plaintiff alleges that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, his claims are typical of the other putative class members.  Accordingly, by pursuing his own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35; *Kinder*, 2016 WL 454441, at *1; *Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc.*

14

*v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims arose from the same events, legal documents, and consequences and legal theories affecting all class members).

### D.     The Adequacy Requirement is Satisfied

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *See Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625-26).

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a Michigan customer that purchased a magazine subscription from Playboy and then allegedly had his subscription information disclosed to third

parties without his consent.  Compl. ¶¶ 11, 43-47.  Thus, Plaintiff and the

Settlement Class Members have the exact same interest in recovering the statutory

damages to which they are entitled under the PPPA.  As such, Plaintiff does not

have any interest antagonistic to those of the proposed Settlement Class and his

pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. and Hedin Hall

LLP – have extensive experience in litigating class actions of similar size, scope,

and complexity to the instant action.  Marchese Decl. ¶ 20-21.  They regularly

engage in major complex litigation involving consumer privacy, including recent

PPPA cases, have the resources necessary to conduct litigation of this nature, and

have frequently been appointed lead class counsel by courts throughout the

country.  *Id.* ¶¶ 20-21*; see* Firm Resumes of Bursor & Fisher, P.A. and Hedin Hall

LLP, attached to the Marchese Declaration as Exhibits B-C; *see also Ebin v.*

*Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor &

Fisher, P.A., are class action lawyers who have experience litigating consumer

claims.  …  The firm has been appointed class counsel in dozens of cases in both

federal and state courts, and has won multi-million dollar verdicts or recoveries in

five class action jury trials since 2008."); *Luczak v. Nat'l Beverage Corp.*, 2018

WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive

experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*,

2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.").

Further, proposed Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, conducting both formal and informal discovery, participating in two private full-day mediations with Judge Rosen, and ultimately, negotiating a settlement that provides for the best per class member recovery ever in a PPPA case.  Marchese Decl. ¶¶ 3-19.   In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b).  Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient

17

adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  As explained below, the proposed Settlement Class meets these requirements.

### 1.    Common Questions Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes,* 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) in that both require the existence of common questions of law and fact – however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues.  *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 423 (E.D. Mich. 2013).  In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007).  Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis.  *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

In this case, there allegedly was a common course of conduct engaged in by Playboy.  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See Coulter-Owens*, 308 F.R.D. at 536; *Kinder*, 2016 WL 454441, at *2.

Since Defendant engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," and as such, predominance is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)).

### 2.  A Class Action Is A Superior Mechanism

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615.  Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617.  Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545*; see also Powers*, 501 F.3d at 619 ("[C]ases alleging a single course of

19

wrongful conduct are particularly well-suited to class certification."). As Judge Steeh held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendant violated the PPPA are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 326 (E.D. Mich. 2001). Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any PPPA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware that Defendant disclosed their protected information to third-parties. Where consumers are unlikely to discover (and vindicate) injuries absent

certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed class counsel's:  (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See supra* at § IV.D.  And as a result of their zealous efforts in this case, proposed Class Counsel have secured the best per class member recovery ever in a PPPA case.  Thus, the Court should appoint Bursor & Fisher, P.A. and Hedin Hall LLP as Class Counsel.

21

## VI.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The procedure for review of a proposed class action settlement is a well-established two-step process.  *Id.* § 11.25.  The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).  The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate."  The Rule 23(e)(2) factors are:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiation at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii)

the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider.  *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are:  "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *Id.*

### A.    The Rule 23(e)(2) Factors Weigh In Favor Of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

First, as explained above, Plaintiff and Proposed Class Counsel have adequately represented the class, including by securing the largest per class member recovery ever in a PPPA case.  *See supra* at Introduction.

Second, the Settlement was negotiated at arm's-length through mediation sessions with Judge Rosen, and is the result of a mediator's proposal by Judge Rosen.  *See supra* at § II.C.

23

Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement provides an extraordinary recovery for the Settlement Class and does so without additional delay and uncertainty of litigation. The Settlement also provides for Settlement Class Members to receive cash payments of approximately $110 without even filing a claim form. Agreement ¶ 2.1. So long as Settlement Class Members do not exclude themselves from the Settlement, they will receive a cash payment. *Id.* The attorneys' fees and costs provided for by the Settlement are consistent with that of other PPPA settlements in this District. *See, e.g., Perlin v. Time Inc.*, No. 16-cv-10635-GCS, Dkt. 55 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's PPPA claim); *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, Dkt. (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's PPPA claim); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, Dkt. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's PPPA claim). And the Settlement Agreement is attached to the Marchese Declaration as Exhibit A.

Fourth, the proposed Settlement treats class members equitably relative to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Agreement ¶ 2.1

24

### B.   The Sixth Circuit's *UAW* Factors Weigh In Favor Of Preliminary Approval

The Sixth Circuit's *UAW* factors also weigh in favor of preliminary

approval.  When evaluating the factors, "[t]he district court enjoys wide discretion

in assessing the weight and applicability of the[] factors." *Granada Investments,*

*Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).  "The court may

choose to consider only those factors that are relevant to the settlement at hand and

may weigh particular factors according to the demands of the case." *UAW v. Gen.*

*Motors Corp.*, 2006 WL 891151 at \*14 (E.D. Mich. Mar. 31, 2006).

### 1.   There Is No Risk Of Fraud Or Collusion (*UAW* Factor 1)

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at

631.  "Courts presume the absence of fraud or collusion in class action settlements

unless there is evidence to the contrary." *Leonhardt v. AvrinMeritor, Inc.*, 581 F.

Supp. 2d 818, 838 (E.D. Mich. 2008).  Where, as here, a settlement was reached

through arm's-length negotiations through an experienced mediator, there is no

evidence of fraud or collusion.  *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*,

2010 WL 3070130, at \*13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the

Settlement Agreement were conducted at arm's-length by adversarial parties and

experienced counsel, which itself is indicative of fairness, reasonableness, and

adequacy.").

2. **Litigation Through Trial Would Be Complex, Costly, And Long (*UAW* Factor 2)**

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. This case is no exception. As discussed above, the Parties have engaged in document discovery, and two private mediation sessions. Marchese Decl. ¶¶ 6-17. The next steps in the litigation would include depositions of the Parties, third-party discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. Playboy had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiff is aware that Playboy would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Playboy's agents), that Playboy also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Playboy "at retail," as is required to come under the scope of the statute. Plaintiff and Class Counsel are also aware that Playboy would oppose class certification vigorously, and that Playboy would prepare a competent defense

26

at trial.  Looking beyond trial, Plaintiff is also keenly aware that Playboy could

appeal the merits of any adverse decision, and that in light of the statutory damages

in play it would argue – in both the trial and appellate courts – for a reduction of

damages based on due process concerns.  *Id.* ¶ 24.

The Settlement, on the other hand, permits a prompt resolution of this action

on terms that are fair, reasonable and adequate to the Class.  This result will be

accomplished years earlier than if the case proceeded to judgment through trial

and/or appeals, and provides certainty whereas litigation does not and could result

in defeat for the Class on summary judgment, at trial or on appeal.  Consequently,

this *UAW* factor plainly weighs in favor of preliminary approval of the proposed

Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (*UAW* Factor 3)

The third *UAW* factor is "the amount of discovery engaged in by the

parties."  *UAW*, 497 F.3d at 631.  Here, the Parties have conducted both formal and

informal discovery into areas such as the class size, Defendant's purported notices

of the disclosures, the recipients of Defendant's alleged unlawful disclosures, and

Defendant's financial position.  Marchese Decl. ¶ 6-7; 9-10; 13.  Class Counsel's

experience in similar matters, as well as the efforts made by counsel on both sides

confirms that they are sufficiently well apprised of the facts of this action, and the

strengths and weaknesses of their respective cases, to make an intelligent analysis

of the proposed settlement.

### 4. Plaintiff Would Face Real Risks If The Case Proceeded (*UAW* Factor 4)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Here, although Plaintiff's case is strong, it is not without risk. As aforementioned, Defendant has made clear that absent a settlement it will both move for summary judgment on various issues and vigorously contest class certification. *See supra* at § VI.B.2. The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing is filed. Defendant would likely argue that individual questions preclude class certification. Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed Settlement eliminates this risk, expense, and delay. This *UAW* factor thus favors preliminary approval.

### 5.    Class Counsel And The Class Representative Support The Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both Class Counsel and the Class Representative support the Settlement. *See* Marchese Decl. ¶¶ 23-25. This *UAW* factor therefore favors preliminary approval.

### 6.    The Reaction Of Absent Class Members (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Since Notice of the Settlement has not yet issued to the Class, it is not possible to gauge the reaction of the Class at this time. Prior PPPA magazine settlements suggest that the Class will react favorably, however.

### 7.    The Settlement Serves The Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotations omitted). Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class

29

action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of consumers' personal reading choices. In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of readers under the PPPA, especially because consumers are generally unaware that their privacy rights are being violated by these data sharing practices (here, Plaintiff alleged that Playboy secretly disclosed its customers' personal reading information). Thus, the alternative to a class action in this case would have been no enforcement at all, and Playboy's alleged unlawful conduct would have gone unremedied. This factor therefore supports preliminary approval.

All of the *UAW* factors weigh in favor of approval. If objections arise after notice is issued to the Class, the Court may reevaluate its determination. Because the settlement on its face, is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## VII. THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle*

& *Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members.  *See* Fed. R. Civ. P. 23 (c)(2)(B).  Notice is "adequate if it may be understood by the average class member."  *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due process.  First, the Settlement Administrator will send direct notice by postal mail to all Settlement Class Members for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member.  Agreement ¶ 4.1(b)(ii); Agreement Ex. B.  If more than one postal address is identified, the Settlement Administrator will send the postal mail notice to both addresses, and each notice will indicate the address to which the Settlement Class Member's cash award check will be sent.  *Id.* ¶ 4.1(b)(iii).  Next, for any Settlement Class Member for whom the Settlement

31

Administrator is unable to identify at lease one postal address, the Settlement

Administrator will send notice via email.  *Id.* ¶ 4.1(b)(iv); Agreement Ex. A.

Further, the Settlement Administrator will establish a Settlement Website that shall

contain the "long form notice" (*see* Agreement Ex. C), as well as access to

important Court documents, upcoming deadlines, and the ability to file claim forms

online, or an updated postal address.  *Id.* ¶ 4.1(c).  Finally, the Settlement

Administrator will also provide notice of the Settlement to the appropriate state

and federal officials as required by the Class Action Fairness Act, 28 U.S.C. §

1715.  *Id.* ¶ 4.1(e).

In sum, the proposed methods for providing notice to the Class comports

with both Rule 23 and Due Process, and thus, should be approved by the Court.

## VIII. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court

grant his Unopposed Motion for Preliminary Approval of the Settlement.  A

Proposed Order granting preliminary approval, certifying the Settlement Class,

appointing Class Counsel, and approving the Proposed Notice of Settlement, is

submitted herewith.

Dated:  January 31, 2020

Respectfully submitted,

**MARK KOKOSZKI**,

By:_____ */s Joseph I. Marchese*_____
One of Plaintiff's Attorneys

Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Proposed Class Counsel*

Nick Suciu III
nicksuciu@bmslawyers.com
**BARBAT, MANSOUR & SUCIU PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: 313.303.3472

*Additional Counsel for Plaintiff*

33

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph I. Marchese, an attorney, hereby certify that on January 31, 2020, I served the above and foregoing *Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement* on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s Joseph I. Marchese*
Joseph I. Marchese

34