# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK KOKOSZKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYBOY ENTERPRISES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-10302-BAF-RSW<br><br>Hon. Bernard A. Friedman<br><br>Mag. Judge R. Steven Whalen |

### DECLARATION OF JOSEPH I. MARCHESE IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Joseph I. Marchese, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.  I make this declaration in support of Plaintiff's unopposed motion for preliminary approval of class action settlement filed herewith.

3.  Attached hereto as **Exhibit A** is a true and correct copy of the Parties'

Class Action Settlement Agreement, and the exhibits attached thereto.

4. On January 30, 2019, Plaintiff Mark Kokoszki filed a putative class action on behalf of Playboy subscribers alleging violations of the PPPA. Dkt. 1.

5. In response to the Complaint, on April 1, 2019, Playboy filed an Answer denying the allegations generally and raising 14 affirmative defenses. Dkt. 7.

6. On April 18, 2019, the Parties met and conferred pursuant to Fed. R. Civ. P. 26(f).

7. That same day, Plaintiff served his First Set of Requests for the Production of Documents and First Set of Interrogatories.

8. On April 24, 2019, the Parties filed a Joint Case Management Statement. Dkt. 10.

9. On May 10, 2019, the Parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

10. On June 3, 2019, Playboy served Responses and Objections to Plaintiff's First Set of Requests for the Production of Documents and First Set of Interrogatories. Playboy's Responses and Objections identified recipients of Playboy's alleged unlawful disclosures.

11. From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed

the prospect of resolution.

12. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Gerald E. Rosen (Ret.), who is a neutral at JAMS in Detroit.

13. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, and Playboy's financial position.

14. Given that the information exchanged would have been, in large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

15. The mediation took place on July 10, 2019 at JAMS's offices in Detroit and lasted the entire day. While the Parties engaged in good faith negotiations, which at all times were in arms' length, they failed to reach an agreement that day. However, the Parties made substantial progress and agreed that further negotiations over the next 60 days would be beneficial.

16. Thereafter, the Parties continued to negotiate through and agreed to participate in a second mediation with Judge Rosen.

17. The second mediation took place on October 24, 2019 at JAMS's offices in New York City and lasted the entire day. While the Parties engaged in

good faith negotiations, which at all times were at arm's length, they failed to reach an agreement that day. However, at the conclusion of the mediation session, Judge Rosen issued a mediator's proposal to settle the case.

18. On December 11, 2019, after engaging in continued negotiations through Judge Rosen, the Parties accepted Judge Rosen's mediator's proposal and executed a term sheet.

19. The resulting $3.85 million Proposed Settlement secures the highest per class member recovery ever in a PPPA class action settlement. Based on Playboy's records the proposed Settlement Class includes approximately 21,900 persons with a Michigan street address who subscribed to a Playboy Publication to be delivered to a Michigan street address between January 1, 2016 and July 30, 2016, and who did not opt out of Playboy's information sharing service. With a $3.85 million non-reversionary Settlement Fund, each Class Member who does not exclude him or herself from the Settlement should receive a *pro rata* cash payment of approximately $110.

20. My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit B**). My firm regularly engages in major complex litigation involving consumer privacy, including recent PPPA cases such as

4

*Moeller v. American Media, Inc.*, No. 16-cv-11367 (E.D. Mich.); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 (S.D.N.Y.); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671 (S.D.N.Y.); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, (S.D.N.Y.); and *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 (S.D.N.Y.), has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  My firm has also been recognized by courts across the country for its expertise.  *See* Ex. B; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

21.    My co-counsel, Hedin Hall LLP, also has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Hedin Hall LLP, a true and accurate copy of which is

attached hereto as **Exhibit C**).  The firm has been appointed class counsel by courts throughout the country, including in consumer protection class actions.  *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.").

22.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

23.     Plaintiff and proposed Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

24.     Plaintiff and proposed Class Counsel are also mindful that absent a settlement, the success of Playboy's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever.

Playboy is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case.  Plaintiff and Class Counsel are also aware that Playboy would continue to challenge liability, as well as assert a number of defenses.  Playboy had indicated that it would continue to assert numerous defenses on the merits.  More specifically, Plaintiff is aware that Playboy would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Playboy's agents), that Playboy also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Playboy "at retail," as is required to come under the scope of the statute.  Plaintiff and Class Counsel are also aware that Playboy would oppose class certification vigorously, and that Playboy would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Playboy could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

25.    Plaintiff and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

I declare under penalty of perjury that the above and foregoing is true and

accurate.

Executed this 31st day of January 2020 at New York, New York.

                                                          */s Joseph I. Marchese*
                                                          Joseph I. Marchese