# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK KOKOSZKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYBOY ENTERPRISES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-10302-BAF-RSW<br><br>Hon. Bernard A. Friedman<br><br>Mag. Judge R. Steven Whalen |

## PLAINTIFF'S MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD

Dated:  April 16, 2020

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com
              pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801
E-Mail:  fhedin@hedinhall.com

*Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.     Whether this Court should award Class Counsel attorneys' fees, costs, and expenses in the amount of $1,347,500 – 35% of the $3,850,000 common fund created for the benefit of the class – to compensate and reimburse them for achieving a substantial cash benefit for a class of consumers under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715, *et seq*?

**Plaintiff's Answer: Yes.**

2.     Whether this Court should award Plaintiff Mark Kokoszki a service award of $5,000, in recognition of his zealous efforts on behalf of the class, which have demanded active involvement in this case for over a year?

**Plaintiff's Answer: Yes.**

## **CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

**UNITED STATES SUPREME COURT CASES:**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)

**SIXTH CIRCUIT COURT OF APPEALS CASES:**

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)

*Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496 (6th Cir. 2011)

**UNITED STATES DISTRICT COURT CASES:**

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL (E.D. Mich. May 18, 2016)

*Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL (E.D. Mich. Sept. 28, 2017)

*Perlin v. Time Inc.*, No. 16-cv-10635-GCS (E.D. Mich. Oct. 15, 2018)

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 23(h)

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ................................................................. 1

II.  BACKGROUND .................................................................. 3

    A.  Michigan's Preservation of Personal Privacy Act............................. 3

    B.  Plaintiff's Allegations .................................................... 4

    C.  The Litigation And Work Performed To Benefit The Class ..................................................................... 5

III.  SUMMARY OF THE SETTLEMENT ......................................... 7

IV.  THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED ................................... 8

    A.  The Percentage Method Should Be Used To Calculate Fees........................................................................ 9

    B.  The Reasonableness Of The Requested Fees And Costs Is Supported By This Circuit's Six-Factor Test................................ 10

        1.  Class Counsel Have Secured A Valuable Benefit For The Class.................................................... 11

        2.  Society Has A Stake In Incentivizing The Pursuit Of Complex Consumer Privacy Litigation ............................ 13

        3.  Class Counsel Took The Case On A Contingent Basis, Confronting Significant Risk Of Nonpayment.......................................................... 14

        4.  The Complexity Of The Litigation Supports The Requested Fees ..................................................... 16

        5.  The Parties Are Both Represented By Skilled Counsel .................................................................. 17

        6.  The Value Of The Legal Services Performed On An Hourly Basis Is Reasonable.................................... 19

iii

C.     The Requested Service Award Reflects Mr. Kokoszki's
       Active Involvement In This Action And Should Be
       Approved ........................................................................... 23

V.     CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**PAGE(S)**

## UNITED STATES SUPREME COURT CASES

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................ 11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................ 14

*Hensley v Eckerhart*,
  461 U.S. 424 (1983) ............................................................................ 19

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ............................................................................ 10

## UNITED STATES COURT OF APPEALS CASES

*Bowling v. Pfizer*,
  102 F.3d 777 (6th Cir. 1996) .............................................................. 10

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ............................................................ 23

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ............................................................ 22

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ........................................................ Passim

*Geier v. Sundquist*,
  372 F.3d 784 (6th Cir. 2004) .............................................................. 20

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) .............................................................. 23

*In re S. Ohio Corr. Facility*,
  24 Fed. App'x 520 (6th Cir. 2001) ..................................................... 11

*Isabel v. City of Memphis*,
    404 F.3d 404 (6th Cir. 2005)................................................................... 19

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974)................................................................... 19

*Mathias v. Accor Econ. Lodging, Inc.*,
    347 F.3d 672 (7th Cir. 2003)................................................................... 11

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974)................................................................. 10

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993).................................................................... 8, 9

*Van Horn v. Nationwide Property & Cas. Ins. Co.*,
    436 F. App'x 496 (6th Cir. 2011)........................................................ 19, 20

## UNITED STATES DISTRICT COURT CASES

*Beckham v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013)............................................................. 21

*Connectivity Sys. Inc. v. Nat'l City Bank*,
    2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ....................................... 21

*Dick v. Sprint Commc'ns Co. L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014) ........................................................ 12

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) .......................................... 18

*Fournier v. PFS Invs., Inc.*,
    997 F. Supp. 828 (E.D. Mich. 1998) ..................................................... 9

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)................................... 22

*Groover v. Prisoner Transportation Servs., LLC*,
    2019 WL 3974143 (S.D. Fla. Aug. 22, 2019)..................................... 18

*Hillson v. Kelly Servs. Inc.*,
   2017 WL 3446596 (E.D. Mich. Aug. 11, 2017) ................................................... 9

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ............................................................. Passim

*In re CMS Energy ERISA Litig.*,
   2006 WL 2109499 (E.D. Mich. June 27, 2006) ................................................. 23

*In re Delphi*,
   248 F.R.D. 483 (E.D. Mich. Jan. 11, 2008) ................................................. 12, 17

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
   1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ....................................... 13, 15, 17

*In re S. Ohio Corr. Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997) ........................................................................ 10

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................... 16

*Kelly v. Corrigan*,
   890 F. Supp. 2d 778 (E.D. Mich. 2012) ............................................................. 10

*Kogan v. AIMCO Fox Chase L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ................................................................ 15, 19

*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
   2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ................................................. 23

*Luczak v. Nat'l Beverage Corp.*,
   2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ..................................................... 18

*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ....................................................................... 9

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
   2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................................ 22

*Shane Grp., Inc. v. BCBS of Mich.*,
  2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ........................................... 10, 23

*Stanley v. U.S. Steel Co*,
  2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ................................................... 14

*Wise v. Popoff*,
  835 F. Supp. 977 (E.D. Mich. 1993) ..................................................................... 9

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (Oct. 2, 2013) ....................................................................... 22

## **STATUTES**

Michigan Preservation of Personal Privacy Act,
  M.C.L. §§ 445.1711, *et seq.* ....................................................................... Passim

## **RULES**

Fed. R. Civ. P. 23(h) ............................................................................................ 2, 8

Fed. R. Civ. P. 26(a)(1) ........................................................................................... 5

Fed. R. Civ. P. 26(f) ................................................................................................. 5

## I.    INTRODUCTION

The Settlement negotiated by Plaintiff and Class Counsel in this action, and preliminarily approved by this Court on February 7, 2020, represents the best result ever achieved on a per-class member basis in an action brought under the Michigan Preservation of Personal Privacy Act (the "PPPA").  The Settlement – which is the result of a mediator's proposal by Judge Gerald E. Rosen (Ret.), formerly of the Eastern District of Michigan and now a mediator at JAMS (Detroit) – creates a $3.85 million non-reversionary cash Settlement Fund, from which every Settlement Class Member (except for those who submit requests for exclusion from the Settlement) will *automatically* receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $220.[1]  Moreover, unlike prior PPPA settlements, this Settlement does not require Settlement Class Members to submit claim forms, and instead provides *automatic* payments to every class member who does not exclude him or herself.  Thus, unlike in past PPPA settlements where 80%-90% of settlement class members did not submit claim forms and thus did not receive cash payments, in this case every non-excluded Settlement Class member will receive a monetary payment by check upon final

---

[1] At preliminary approval, Class Counsel estimated that each Settlement Class Member would receive a payment of approximately $110.  However, since that time, Defendant's records have confirmed the class size is half as large as was expected, thus doubling the recovery.  The notices sent to class members included this corrected, larger dollar amount.

approval of the proposed Settlement.

Obtaining this unprecedented relief did not come easily.  Plaintiff shouldered significant risk, conducted a lengthy pre-filing investigation, engaged in both informal and formal discovery, and conducted months of contentious, arm's-length negotiations, including two full days of mediation with Judge Rosen.

In light of this exceptional result, Plaintiff respectfully requests pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees, costs, and expenses of 35% of the settlement fund, or $1,347,500, as well as a service award of $5,000 for Plaintiff for his service as class representative.  Although this Settlement provides for payments to Settlement Class Members that are more than double that of any other PPPA settlement, the requested fee is an equal percentage to that approved by other courts in this District in PPPA class action settlements. *See Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, ECF No. 81 (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's PPPA claim that paid approximately $50 per claimant); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's PPPA claim that paid $105 per claimant).  And it is a lesser percentage than other courts in this District have recently approved.  *See Perlin v. Time Inc.*, No. 16-cv-10635-GCS, ECF No. 55 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement

2

fund resolving plaintiff's PPPA claim that paid between $25-$50 per claimant).

For these reasons, and as explained further below, this Court should approve the requested fees, costs, expenses, and service award.

## II.   BACKGROUND

A brief summary of the PPPA, the litigation performed by Class Counsel for the Settlement Class' benefit, and the beneficial terms of the Settlement provide necessary context to the reasonableness of the requested fee and service award.

### A.   Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."  Complaint (Dkt. 1) ("Compl"), Ex. A.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees.  *See* M.C.L. § 445.1715.

## B.    Plaintiff's Allegations

Playboy Enterprises, Inc. ("Playboy" or "Defendant") is an international media company that publishes *Playboy* magazine.  *See* Compl. ¶ 1.  Plaintiff alleges that between January 30, 2016 and July 30, 2016, Playboy disclosed information related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 7-11, 43-49.  To increase the value of such information, Plaintiff alleges that Playboy traded its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 7, 43-45.  Plaintiff further alleges that Playboy thereafter "enhanced" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then allegedly disclosed the enhanced information to other unrelated third parties for a profit.  *Id.*

Plaintiff further alleges that no matter how consumers subscribed (*i.e.*, via postcard, over the phone, on Playboy's website, or through a subscription agent's website), Playboy's customers never provided consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 7, 47-48.  This is because – during the subscription process – Plaintiff claims that customers are not required to consent to any terms or policies informing them of Playboy's alleged

4

disclosure practices.  *Id.*

### C.   The Litigation And Work Performed To Benefit The Class

In March 2018, Class Counsel began a pre-suit investigation into Playboy's alleged data-sharing practices.  See Declaration of Joseph I. Marchese In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Service Award ("Marchese Decl.") ¶ 4.  After that investigation, Plaintiff filed this class action lawsuit on January 30, 2019 in the United States Court for the Eastern District of Michigan.  (Dkt. 1).  In response to the Complaint, on April 1, 2019, Playboy filed an Answer denying the allegations generally and raising 14 affirmative defenses.  (Dkt. 7).  On April 24, 2019, the Parties filed a Joint Case Management Statement.  (Dkt. 10).  During that same time, the Parties commenced discovery, which included the exchange of written discovery and initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Marchese Decl. ¶¶ 7-14.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26(f), discussed the prospect of resolution.  *Id.* ¶ 15.  Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Gerald E. Rosen (Ret.), who is a neutral at JAMS in Detroit.  *Id.* ¶ 16. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, Playboy's third-party data

company relationships, and Playboy's financial position.  *Id.* ¶ 17.  Given that the information exchanged would have been the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.  *Id.* ¶ 18.  In preparation for the mediation, Class Counsel prepared a detailed mediation statement outlining the strength of the Plaintiff's case, and comparing his case with other PPPA cases against magazine publishers that had settled, in order to help evaluate any potential settlement.  *Id.* ¶ 19.  Class Counsel also thoroughly reviewed and analyzed the informal discovery produced by Defendant.  *Id.*

The initial mediation session took place on July 10, 2019 at JAMS's offices in Detroit and lasted the entire day.  While the Parties engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach an agreement that day.  However, the Parties made substantial progress and agreed that further negotiations over the next 60 days would be beneficial.  *Id.* ¶ 20.

Thereafter, the Parties continued to negotiate and agreed to participate in a second mediation session with Judge Rosen.  *Id.* ¶ 21.  In preparation for the second mediation, Class Counsel continued their investigation of Plaintiff's claims, and thoroughly reviewed and analyzed documents produced by Defendant concerning its financial position.  *Id.* ¶ 22.  The second mediation took place on

October 24, 2019 at JAMS's offices in New York City and again lasted the entire day.  While the Parties engaged in good faith negotiations, which at all times were at arm's-length, they failed to reach an agreement that day.  However, at the conclusion of the mediation session, Judge Rosen issued a mediator's proposal to resolve the case on a classwide basis.  *Id.* ¶ 23.

On December 11, 2019, after engaging in continued negotiations through Judge Rosen, the Parties accepted Judge Rosen's mediator's proposal and executed a term sheet.  *Id.* ¶ 24.  Thereafter, the Parties drafted and executed the Settlement Agreement and related documents which are submitted herewith.  *Id.* ¶ 26.  On February 7, 2020, the Court granted preliminary approval to the Settlement.  *Id.* ¶ 28 (citing Dkt. 20).  During and since that time, Class Counsel has worked with the Settlement Administrator to administer the Notice Plan.  *Id.* ¶¶ 33-34.

## III.    SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in the best result ever achieved on a per-class member basis in a PPPA class action.  *Id.* ¶ 25.  The Settlement provides an exceptional result by delivering immediate cash benefit to approximately 10,665 persons with a Michigan street address who subscribed to a Playboy Publication to be delivered to a Michigan street address between January 1, 2016 and July 30, 2016, and who did not opt out of Playboy's information sharing service.  *Id.*  The Settlement creates a non-reversionary $3,850,000 Settlement Fund, from which

class members will *automatically* be mailed a check for a *pro rata* cash payment, which Class Counsel estimates will be approximately $220. *Id.*; *see also* Marchese Decl. Ex. A, Class Action Settlement Agreement ("Agreement") ¶¶ 1.35, 2.1.

## IV. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

The requested fee and cost award of $1,347,500, representing 35% of the cash common fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Here, the Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses up to 35% of the Settlement Fund. Agreement ¶ 8.1.

In common-fund cases such as this one, courts in the Sixth Circuit apply one of two fee calculation methods—percentage-of-the-fund or lodestar—and the fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). While the Court has discretion in deciding whether to apply the percentage-of-the-fund calculation or the lodestar method, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016), whichever method it ultimately selects must be justified by "a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at that fee," keeping the unique circumstances of

8

each case in mind.  *Id*. (quoting *Rawlings*, 9 F.3d at 516).

### A.     The Percentage Method Should Be Used To Calculate Fees

There is a preference for using the percentage-of-the-fund method in

common fund cases such as this.  *See e.g. In re Cardizem CD Antitrust Litig.*, 218

F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the

percentage-of-the-fund method is consistent with the majority trend."); *Fournier v.

PFS Invs., Inc.*, 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) ("[M]any courts have

strayed from using lodestar in common fund cases and moved towards the

percentage of the fund method which allows for a more accurate approximation of

a reasonable award for fees."); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich.

1993) (same); *Hillson v. Kelly Servs. Inc.*, 2017 WL 3446596, at *2 (E.D. Mich.

Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is 'easy to

calculate' and 'establishes reasonable expectations on the part of plaintiffs'

attorneys.'").

This is so because while "[t]he lodestar method better accounts for the

amount of work done … the percentage of the fund method more accurately

reflects the results achieved."  *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315

F.R.D. 226, 243 (E.D. Mich. 2016).  Thus, the percentage-of-the-fund approach

better incentivizes attorneys to maximize recovery for absent class members.

Indeed, the percentage method has been used to calculate fees in every other PPPA

class action settlement in this District. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, ECF No. 81 at ¶ 14 (E.D. Mich. May 18, 2016); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, ECF No. 42 at ¶ 15 E.D. Mich. Sept. 28, 2017); *Perlin v. Time Inc.*, No. 16-cv-10635-GCS, ECF No. 55 at ¶ 14 (E.D. Mich. Oct. 15, 2018). In contrast, the lodestar approach is most often applied in federal fee-shifting cases. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Kelly v. Corrigan*, 890 F. Supp. 2d 778, 787 (E.D. Mich. 2012).

### B. The Reasonableness Of The Requested Fees And Costs Is Supported By This Circuit's Six-Factor Test

The Sixth Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: (1) the value of the benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling*, 102 F.3d at 780; *In re Cardizem*, 218 F.R.D. at 533.

A "reasonable" fee in common-fund case typically ranges "from 20 to 50 percent." *Shane Grp., Inc. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio

1997), *rev'd on other grounds,* 24 Fed. App'x 520 (6th Cir. 2001) ("[t]ypically, the

percentage awarded ranges from 20 to 50 percent of the common fund"); *see also*

*Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (Posner,

J.) (referring to the "usual 33-40 percent contingent fee" charged by plaintiff's

lawyers).  The amount awarded is calculated as percentage "from the fund as a

whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gascho,* 822 F.3d

at 282 (calculating the percentage, as "[a]ttorney's fees are the numerator" and "the

dollar amount of the Total Benefit to the class (including the benefit to class

members, attorney's fees, and [potentially] the costs of administration)" is the

denominator).  As aforementioned, Courts in this District have awarded 35% of

common funds in PPPA cases.  *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-cv-

11284-TLL, ECF No. 81 (E.D. Mich. May 18, 2016); *Moeller v. American Media,*

*Inc.*, No. 16-cv-11367-JEL, ECF No. 42 (E.D. Mich. Sept. 28, 2017).  And one

Court in this District has awarded 40%.  *See Perlin v. Time Inc.*, No. 16-cv-10635-

GCS, ECF No. 55 (E.D. Mich. Oct. 15, 2018).

Under the circumstances of this case – wherein Class Counsel received the

best per-class member recovery ever in a PPPA case early in the litigation – the

requested 35% award is reasonable.

### 1. Class Counsel Have Secured A Valuable Benefit For The Class

The value of the benefit to the class is the most important factor in assessing

11

the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (describing result achieved as "primary factor"). Assessing the overall value includes consideration of both tangible and intangible benefits. *See Gascho*, 822 F.3d at 282 (requiring "appropriate consideration" of "cash and noncash settlement components" in assessing the total benefits to the class). The risk of continued litigation can also be considered in relation to the value of the benefit to the class under this factor. *Dick*, 297 F.R.D. at 299.

The Settlement here provides for the largest per-class member recovery ever in a PPPA case. Specifically, the Settlement creates a $3.85 million non-reversionary cash settlement fund for the benefit of 10,665 Settlement Class Members. After deducting notice and administration costs, and the requested attorneys' fees and service award, those class members will *automatically* be mailed a check for approximately $220 each. Previously, the largest per-class member recoveries in PPPA cases were *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, Dkt. 99 (S.D.N.Y.) (approving class action settlement that paid approximately $109 per claimant) and *Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. 42 (E.D. Mich.) (approving class action settlement that paid $105 per claimant). The per-class member recovery here is more than double the recoveries in those cases. Moreover, under this Settlement

12

class members do not need to file a claim in order to receive a cash payment. Thus, unlike in *Ruppel* and *Moeller*, every class member will receive a check for a cash payment.

Weighed against the risks of continued litigation – including the Court's eventual decision regarding class certification, additional fact and expert discovery necessary for trial, motions for summary judgment, and potentially other obstacles that could strip the class of any recovery – the value of the immediate monetary recovery that the Settlement affords thus supports the reasonableness of the requested attorneys' fees.  The first factor is well satisfied.

### 2. Society Has A Stake In Incentivizing The Pursuit Of Complex Consumer Privacy Litigation

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the settlement here.  *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions have value to society more broadly, both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources.").  It is therefore in society's interest to encourage litigation that protects important consumer privacy rights that would not otherwise be safeguarded.  *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state

13

consumer protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society.").  Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of Michiganders' personal reading choices.  In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of readers and viewers under the PPPA, especially given the fact that consumers are generally unaware that their privacy rights are being violated (here, Plaintiff alleged Playboy secretly disclosed its customers' personal reading information). Thus, the alternative to a class action in this case would have been no enforcement at all, and Defendant's allegedly unlawful conduct would have continued unabated.  This factor thus supports the requested award.

### 3.    Class Counsel Took The Case On A Contingent Basis, Confronting Significant Risk Of Nonpayment

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award.  *See In re Cardizem*, 218 F.R.D. at 533; *Stanley*, 2009 WL 4646647, at *3 ("Numerous cases recognize that the contingent

fee risk is an important factor in determining the fee award.").  When attorneys

invest significant time and resources in pursuing the litigation, in spite of the risk

they will not be compensated, this factor is generally satisfied.  *In re Rio*, 1996 WL

780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D.

Mich. 2000).  The contingent nature of the case is amplified where class counsel

face a formidable defendant.  *See In re Cardizem*, 218 F.R.D. at 533.

Class Counsel pursued the action purely on a contingency basis.  Marchese

Decl. ¶ 37.  For over a year, Class Counsel invested significant time, effort, and

resources to the litigation without any compensation.  Cognizant of the risk of

nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation

of Defendant's practices, filed the case, and exchanged written discovery.

*Id.*  ¶¶ 4-14.  Counsel also paid for and participated in not only two full days of

private mediation, but weeks of discussions and engagement with the mediator in

order to try and resolve the action.  *Id.* ¶¶ 15-24.  Class Counsel fronted this

investment of time and resources, despite the significant risk of nonpayment

inherent in this case.  *Id.* ¶ 31.  And given the defenses mounted by Defendant,

success on the legal issues presented by this case was far from certain.  *Id.*  In

addition, Class Counsel faced highly qualified defense counsel, who regularly

defend complex class action cases.  *Id.*  Finally, both informal discovery and public

news articles confirmed that Playboy's financial condition was questionable,

thereby adding to the risk of nonpayment.  *Id.* ¶ 22.  Given the contingent nature of the litigation and the significant risk of nonpayment, the third factor also supports the reasonableness of the fee award.

### 4.    The Complexity Of The Litigation Supports The Requested Fees

The complexity of the litigation reinforces the reasonableness of a requested fee award.  *In re Cardizem*, 218 F.R.D. at 533.  "Most class actions are inherently complex."  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).  This case is no exception.  It involved multiple layers of factual complexity, much of which was obscured at the outset due to Defendant's alleged concealment of its practices from consumers.  As a result, this required extensive preliminary investigation into Defendant's business practices, its methods of data collection and aggregation, and the nature of its relationships with various third-party data companies.

The case involved complex legal issues as well.  Defendant challenged the merits of Plaintiff's claims, raising 14 affirmative defenses, including that the claims were "barred … by the applicable statute of limitations," and it denied the factual allegations which Plaintiff contends constitute a violation of the PPPA. Dkt. 7.

In the end, because this case involved complex factual and legal questions under the PPPA, the complexity of the litigation further supports the

reasonableness of the requested fees.

## 5. The Parties Are Both Represented By Skilled Counsel

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In re Rio*, 1996 WL 780512, at *18. When counsel for both parties have significant experience, "the ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Class Counsel are well-respected attorneys with significant experience litigating class actions of similar size, scope, and complexity to the instant action. Marchese Decl. ¶¶ 46-48; Declaration of Frank S. Hedin In Support Of Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, And Service Award ("Hedin Decl.") ¶¶ 7-8. They regularly engage in major complex litigation involving consumer privacy, including recent PPPA cases. *Id.* In particular, Bursor & Fisher, P.A. also served as Class Counsel in in *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL (E.D. Mich.), a case brought under the PPPA wherein they obtained a class-wide settlement for $7.6 million; in *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279-AT (S.D.N.Y.), a case brought under the PPPA wherein they obtained a class-wide settlement for $50 million; in *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444-KMK (S.D.N.Y.), a case brought under the

17

PPPA wherein they obtained a class-wide settlement for $16.375 million; in *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671-NRB (S.D.N.Y.), a case brought under the PPPA wherein they obtained a class-wide settlement for $13.75 million; and in *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812-KMK (S.D.N.Y.), a case brought under the PPPA wherein they obtained a class-wide settlement for $8.225 million.

Moreover, Class Counsel has been recognized by courts across the country for their expertise. *See* Firm Resumes of Bursor & Fisher, P.A. and Hedin Hall LLP, attached to the Marchese Declaration as Exhibit L, and to the Hedin Declaration as Exhibit A; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.")

As aforementioned, Class Counsel faced formidable defense counsel in this

18

action.  Defendant was represented by a notable defense firm who regularly practices in this District – Honigman LLP.  Honigman has a strong track record defending class action cases.  And Defendant made clear that, but for the Settlement, it would dispute its liability and assert multiple defenses.

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

### 6. The Value Of The Legal Services Performed On An Hourly Basis Is Reasonable

The sixth and final factor assesses the value of the legal services performed on an hourly basis.  *In re Cardizem*, 218 F.R.D. at 533.  The value of the legal services performed essentially amounts to a lodestar, which involves multiplying the number of hours reasonably expended by counsel by their reasonable hourly rate.  *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).[2]  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors.  *Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 499-500 (6th Cir. 2011) (citing *Johnson v. Georgia Highway Express, Inc.*, 488

---

[2] Although this factor may be viewed as a lodestar cross-check, *see Kogan*, 193 F.R.D. at 504, a cross-check is entirely optional.  *See Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional.)

F.2d 714, 717-19 (5th Cir. 1974)).  Salient factors include the results achieved, the risk of not prevailing in the action, the skill and experience of the attorneys, and awards in similar cases.  *See Geier v. Sundquist*, 372 F.3d 784, 793 (6th Cir. 2004); *see also Van Horn*, 436 F. App'x at 500.  These factors closely track the *Ramey* criteria used to assess reasonableness, discussed in detail above.  Just as results, risk, and skill support the reasonableness of the fees under the percentage method, they also justify a multiplier of the base value of Class Counsel's services.

To date, Class Counsel have expended 616 hours litigating this case. Marchese Decl. ¶ 37; Hedin Decl. ¶ 46.  The value of Class Counsel's services at their current hourly rates amounts to $390,399.50.  *Id.*  Therefore, the value of the time spent litigating Plaintiffs' claims and securing the Agreement, including reimbursable expenses of $23,512.46, totals $413,911.96.  *Id.*  This figure does not include the additional $35,000 to $50,000 in fees that Class Counsel will likely incur in connection with proceeding through final approval of the Settlement and the administration process and dealing with any potential objections.  *Id.*

| Summary Of Class Counsel's Time, Lodestar And Expenses | | | |
|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Expenses** |
| Bursor & Fisher, P.A. | 347.3 | $215,744.50 | $16,266.74 |
| Hedin Hall LLP | 268.7 | $174,655.00 | $7,245.72 |
| **Total** | **616.0** | **$390,399.50** | **$23,512.46** |

Here, the requested fee award represents a multiplier of 3.39, which is justified given that this settlement represents the best ever per-class member recovery in a PPPA case. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). Typical multipliers in this Circuit range from two to five. *See id.* Importantly, this requested multiplier is lower than multipliers approved in PPPA cases by other courts in this District and in the Southern District of New York. *See Moeller*, No. 16-cv-11367-JEL, ECF Nos. 37, 42 (E.D. Mich. Sept. 28, 2017) (approving multiplier between 4.8 and 4.9); *Edwards*, No. 15-cv-09279-AT, ECF Nos. 306, 314 (S.D.N.Y. Apr. 24, 2019) (approving multiplier of 5.25).

| Case | Approximate Payment Per Claimant | Lodestar Multiplier |
|------|----------------------------------|---------------------|
| *Moeller v. American Media, Inc.*, No. 16-cv-11367 | $105 | 4.8-4.9 |
| *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 | $98 | 5.25 |

That this case settled prior to class certification should not result in a lower fee award than what would otherwise be a reasonable result. As one court put it, a higher multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckham v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013). Moreover, due to Defendant's financial position, Class Counsel recognized that an early settlement was the best result for the class members, as continued litigation

would have only further derogated Defendant's finances.

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time.  "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Fed. 9, 2010).  Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (Oct. 2, 2013).

The Sixth Circuit "favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *see also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").  Here, the Parties acted responsibly in reaching a relatively early settlement of this case.  Class Counsel should be rewarded for achieving the best ever per-class member recovery in a PPPA case as efficiently as they did.

**C.     The Requested Service Award Reflects Mr. Kokoszki's Active Involvement In This Action And Should Be Approved**

Service awards are frequently awarded in common-fund cases within this Circuit.  *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) (collecting cases).  The approval of an incentive award is examined through the following factors:  (1) the class representative's actions in protecting the class's interests and whether those actions resulted in a substantial benefit to the class; (2) any direct or indirect financial risk the class representative assumed; and (3) the time and effort the class representative dedicated to the action.  *Lasalle Town Houses Coop Assoc. v. City of Detroit*, No. 4:12-cv-13747, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).  Based on these factors, a service award of $5,000 for the Plaintiff is reasonable.  It is equal to the amount awarded to the class representatives in *Moeller*, No. 16-cv-11367-JEL, ECF No. 42 at ¶ 16 (E.D. Mich. Sept. 28, 2017) and *Taylor*, No. 18-cv-01812-KMK, ECF No. 87 at ¶ 15(S.D.N.Y. Feb. 1, 2018).  It is also a fraction of amounts often awarded in comparable settlements.  *See, e.g., Shane Grp.*, 2015 WL 1498888, at *18 (approving service awards for several named plaintiffs totaling $165,000, with individual awards ranging up to $45,000); *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding three class representatives $15,000 each for contributions to the case, including providing information to class counsel, reviewing documents, assisting with

discovery, and participating in settlement discussions).

As documented in his declaration, Mr. Kokoszki spent approximately 30 hours protecting the interests of the class through their involvement in this case. Declaration of Mark Kokoszki ¶ 10.  Mr. Kokoszki assisted Class Counsel in investigating his claims, by detailing his magazine subscription histories and aiding in drafting the complaint.  *Id.* ¶ 3.  Further, Mr. Kokoszki preserved documents that would need to be turned over to the Defendants in discovery.  *Id.* ¶ 6.  Finally, Mr. Kokoszki was actively consulted and engaged throughout the settlement process. *Id.* ¶¶ 7-8.  As such, his $5,000 service award should be approved.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) approve attorneys' fees, costs, and expenses in the amount of 35% of the settlement fund, or $1,347,500, (2) grant Mr. Kokoszki a service award of $5,000 in recognition of his efforts on behalf of the class, and (3) award such other and further relief as the Court deems reasonable and just.

Dated:  April 16, 2020                          Respectfully submitted,

                                        **MARK KOKOSZKI**,

                                        By:_____*/s Joseph I. Marchese*_____
                                        One of Plaintiff's Attorneys

                                        Joseph I. Marchese
                                        jmarchese@bursor.com
                                        Philip L. Fraietta

pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Class Counsel*

Nick Suciu III
nicksuciu@bmslawyers.com
**BARBAT, MANSOUR & SUCIU PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: 313.303.3472

*Additional Counsel for Plaintiff*

25

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph I. Marchese, an attorney, hereby certify that on April 16, 2020, I served the above and foregoing ***Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, Expenses, And Service Award*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s Joseph I. Marchese*
Joseph I. Marchese
