## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK KOKOSZKI, individually and on behalf of all others similarly situated, <br><br>                   Plaintiff, <br><br>    v. <br><br> PLAYBOY ENTERPRISES, INC., a Delaware corporation, <br><br>                  Defendant. | Case No. 2:19-cv-10302-BAF-RSW <br><br> Hon. Bernard A. Friedman <br><br> Mag. Judge R. Steven Whalen |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: July 31, 2020

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7410
Facsimile:  (212) 989-9163
E-Mail:  jmarchese@bursor.com
        pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin
1395 Brickell Ave., Suite 1140
Miami, FL 33131
Telephone:  (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:  fhedin@hedinhall.com

*Class Counsel*

## PLAINTIFF'S UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Plaintiff Mark Kokoszki respectfully moves the Court to grant his Motion for Final Approval of Class Action Settlement.  Specifically, Plaintiff requests that the Court find that (i) the notice to the Settlement Class satisfies the requirement of Due Process and Rule 23, and (ii) the Settlement is fair, reasonable, and adequate meriting final approval.  In accordance with Local Rule 7.1(a), counsel for Defendant will not oppose the relief sought by this motion.  (*See* Parties' Class Action Settlement Agreement, ¶¶ 8.1, 8.3.)[1]

For the reasons discussed in the accompanying brief, the Motion should be granted.

---

[1] A copy of the Parties' Class Action Settlement Agreement is attached hereto as Exhibit A.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**STATEMENT OF ISSUES PRESENTED**

1. Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice, detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or automatically receiving payment, was transmitted via email and postcard and reached approximately 97.7% of the class?

   **Plaintiff's Answer: Yes.**

2. Whether this Court should grant final approval to the Settlement Agreement under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA"), finding it fair, reasonable, and adequate, when it delivers meaningful prospective and monetary relief to the Settlement Class?

   **Plaintiff's Answer: Yes.**

## <u>CONTROLLING AND MOST IMPORTANT AUTHORITY</u>

**UNITED STATES SUPREME COURT CASES:**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)

**UNITED STATES COURT OF APPEALS CASES:**

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008)

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016)

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

**UNITED STATES DISTRICT COURT CASES:**

*Halaburda v. Bauer Publ'g Co.*,
    No. 12-cv-12831 (E.D. Mich.  2015)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 23

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................... 1

II.  SUMMARY OF THE LITIGATION ...................................... 2

    A.   Michigan's Preservation of Personal Privacy Act ..................... 2

    B.   Plaintiff's Allegations ............................................................ 3

    C.   The Litigation And Work Performed To Benefit The Class................... 4

III. TERMS OF THE SETTLEMENT AGREEMENT ........................................ 6

    A.   Class Definition .................................................................... 6

    B.   Monetary Relief .................................................................... 7

    C.   Release ................................................................................... 7

    D.   Notice and Administration Expenses.......................................... 7

    E.   Service Award And Attorneys' Fees And Expenses................................ 8

IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS ........................... 8

V.  THE SETTLEMENT WARRANTS FINAL APPROVAL .......................... 11

    A.   The Rule 23(e)(2) Factors Weigh In Favor Of Final Approval ............ 12

    B.   The Sixth Circuit's *UAW* Factors Weigh In Favor Of Final
        Approval ............................................................................ 14

        1.   There is No Risk Of Fraud Or Collusion (*UAW* Factor 1) ............ 14

        2.   Litigation Through Trial Would Be Complex, Costly, And
            Long (*UAW* Factor 2)................................................... 14

        3.   Discovery Has Advanced Far Enough To Allow The Parties To
            Resolve The Case Responsibly (*UAW* Factor 3)........................... 16

        4.   Plantiff Would Face Real Risks If The Case Proceeded (*UAW*
            *Factor 4)*........................................................................ 16

        5.   Class Counsel And The Class Representative Support The
            Settlement (*UAW* Factor 5) ........................................... 18

6.    The Reaction Of Absent Class Members Is Overwhelmingly Positive (*UAW* Factor 6) ................................................................ 18

7.    The Settlement Serves The Public Interest (*UAW* Factor 7).......... 19

VI.   CONCLUSION ............................................................................................ 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014) ........................................................... 9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................... 8, 20

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ................................................................. 9

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ................................................................. 9

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
  2013 WL 692856 (E.D. Mich. Feb. 26, 2013) .................................. 11

*Hanlon v. Chrysler*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................. 19

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ................................................. 19, 20

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................................. 9

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008) ........................................ 11, 14

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. 2012) .................................................. 19

*Olden v. Gardner*,
  294 F. App'x 210 (6th Cir. 2008) ....................................................... 19

*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ................................... 14

*UAW v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ........................................................... passim

*UAW v. Gen. Motors Corp.*,
2006 WL 891151 (E.D. Mich. Mar. 31, 2006) .................................... 8, 15

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ................................................................ 11

**STATUTES**

Michigan Preservation of Personal Privacy Act,
    M.C.L. § 445.1711 ......................................................................... passim

**RULES**

Fed. R. Civ. P. 23 ................................................................................. passim

Fed. R. Civ. P. 26 ...................................................................................... 4

## I.   INTRODUCTION

On February 7, 2020, this Court preliminarily approved the class action settlement between Plaintiff Mark Kokoszki ("Plaintiff") and Defendant Playboy Enterprises, Inc. ("Playboy" or "Defendant") and directed that notice be sent to the Settlement Class.  Dkt. 20; *see also* Dkt. 32 (extending deadlines).  The settlement administrator has implemented the Court-approved notice plan and direct notice has reached approximately 97.7% of the certified Settlement Class.  The reaction from the class has been overwhelmingly positive, which is not surprising given that this is the largest and strongest settlement to date under Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. §§ 445.1711-1715.  Specifically, of the 22,006 class members, **<u>zero</u>** have objected and only six (or approximately 0.02%) have requested to be excluded.[2]  The settlement is an excellent result for the class and the Court should grant final approval.

The settlement's strength largely speaks for itself:  it creates a $3.85 million non-reversionary common fund from which class members will automatically receive *pro rata* cash payments estimated to be around $110 (after payment of the costs of notice, administration, attorneys' fees, and incentive awards are made from the fund).  The estimated $110 individual payments exceeds the amount of

---

[2] Of the six requests for exclusion, only three are valid.  *See* Declaration of Jennifer M. Keough ("Keough Decl.") ¶ 25 (explaining that two requests for exclusion were by individuals who are not class members, and one was missing a signature).

1

class member payments in any other PPPA settlement, even though class members are not required to file claims in this settlement to receive payment.  Thus, unlike in other PPPA settlements where 80%-90% of the class did not receive payment, here every class member will receive payment.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

## II.   SUMMARY OF THE LITIGATION

### A.   Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."  Complaint (Dkt. 1) ("Compl"), Ex. A.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees.  *See* M.C.L. § 445.1715.

## B.      Plaintiff's Allegations

Playboy Enterprises, Inc. ("Playboy" or "Defendant") is an international media company that publishes *Playboy* magazine.  *See* Compl. ¶ 1.  Plaintiff alleges that between January 30, 2016 and July 30, 2016, Playboy disclosed information related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-4, 7-11, 43-49.  To increase the value of such information, Plaintiff alleges that Playboy traded its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 7, 43-45.  Plaintiff further alleges that Playboy thereafter "enhanced" its own customer profiles with this additional data (*e.g.*, income levels, religion, age, race, political affiliation, travel habits, medical conditions, etc.), and then allegedly disclosed the enhanced information to other unrelated third parties for a profit.  *Id.*

Plaintiff further alleges that no matter how consumers subscribed (*i.e.*, via postcard, over the phone, on Playboy's website, or through a subscription agent's website), Playboy's customers never provided consent to disclose information related to their magazine subscriptions to third parties.  *Id.* ¶¶ 7, 47-48.  This is because – during the subscription process – Plaintiff claims that customers are not

required to consent to any terms or policies informing them of Playboy's alleged
disclosure practices.  *Id.*

### C.   The Litigation And Work Performed To Benefit The Class

Plaintiff filed this class action lawsuit on January 30, 2019 in the United
States Court for the Eastern District of Michigan.  (Dkt. 1).  In response to the
Complaint, on April 1, 2019, Playboy filed an Answer denying the allegations
generally and raising 14 affirmative defenses.  (Dkt. 7).  On April 24, 2019, the
Parties filed a Joint Case Management Statement.  (Dkt. 10).  During that same
time, the Parties commenced discovery, which included the exchange of written
discovery and initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Declaration
of Joseph I. Marchese In Support Of Plaintiff's Unopposed Motion For Final
Approval ("Marchese Decl.") ¶¶ 6-7; 9-10.

From the outset of the case, the Parties engaged in direct communication,
and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of
resolution.  *Id.* ¶ 11.  Those discussions led to an agreement between the Parties to
engage in mediation, which the Parties agreed would take place before The
Honorable Gerald E. Rosen (Ret.), who is a neutral at JAMS in Detroit.  *Id.* ¶ 12.
As part of the mediation, the Parties exchanged informal discovery, including on
issues such as the size and scope of the putative class, and Playboy's financial
position.  *Id.* ¶ 13.  Given that the information exchanged would have been, in

4

large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 14. The mediation took place on July 10, 2019 at JAMS's offices in Detroit and lasted the entire day. While the Parties engaged in good faith negotiations, which at all times were in arms' length, they failed to reach an agreement that day. However, the Parties made substantial progress and agreed that further negotiations over the next 60 days would be beneficial. *Id.* ¶ 15.

Thereafter, the Parties continued to negotiate through and agreed to participate in a second mediation with Judge Rosen. *Id.* ¶ 16. The second mediation took place on October 24, 2019 at JAMS's offices in New York City and again lasted the entire day. While the Parties engaged in good faith negotiations, which at all times were at arm's length, they failed to reach an agreement that day. However, at the conclusion of the mediation session, Judge Rosen issued a mediator's proposal to settle the case. *Id.* ¶ 17.

On December 11, 2019, after engaging in continued negotiations through Judge Rosen, the Parties accepted Judge Rosen's mediator's proposal and executed a term sheet. *Id.* ¶ 18. On February 7, 2020, the Court granted preliminary approval to the Settlement. *Id.* ¶ 24 (citing Dkt. 20).

5

Thereafter, on April 21, 2020, Playboy filed a Motion To File A Third Party Complaint. *Id.* ¶ 25 (citing Dkt. 25). In order to protect the Settlement Class's interest in quickly securing a final judgment and disbursing the Settlement Fund, the Class, through Class Counsel opposed the motion. *Id.* ¶ 26 (citing Dkt. 26). On May 18, 2020, the Court denied Playboy's Motion To File A Third Party Complaint. *Id.* ¶ 27 (citing Dkt. 28).

Moreover, after the initial notice had been disseminated pursuant to the Court's February 7, 2020 Order, the Parties learned that Playboy's vendor had provided an incomplete class list. *Id.* ¶ 28. Thus, the Parties worked quickly to obtain the complete class list and disseminate notice to the additional Settlement Class Members. *Id.* ¶ 29. On May 28, 2020, the Court granted the Parties' joint motion to extend the settlement deadlines in order to disseminate notice to the additional Settlement Class Members. *Id.* ¶ 30 (citing Dkt. 32).

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement agreement are briefly summarized as follows:

### A.   Class Definition

As part of preliminary approval, the Court certified a Settlement Class, defined as "all Persons with a Michigan street address who subscribed to a Playboy Publication to be delivered to a Michigan street address between January 1, 2016

and July 30, 2016, and who did not opt out of Playboy's information sharing service." Dkt. 20 ¶ 9; Agreement ¶ 1.33.

### B.   Monetary Relief

Defendant will establish a $3.85 million non-reversionary Settlement Fund, from which each Settlement Class Member who does not exclude him or herself shall receive a *pro rata* cash payment, estimated to be approximately $110, after payment of notice and administrative expenses, attorneys' fees, and a service award to the Class Representative.  Agreement ¶¶ 1.35, 2.1.  No portion of the Settlement Fund will revert back Defendant.  *Id.* ¶ 1.35.

### C.   Release

In exchange for the $3.85 million cash payment, Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.28 of the Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information.  *See* Agreement ¶¶ 1.27-1.29 for full release language.

### D.   Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  Agreement ¶¶ 1.31-32, 1.35.

### E.     Service Award And Attorneys' Fees And Expenses

In recognition of his efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Kokoszki may receive, subject to Court approval, a service award of $5,000 from the Settlement Fund, as appropriate compensation for his time, effort, and leadership serving as class representative.  Agreement ¶ 8.3. Defendant has also agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse their expenses in this Action, in an amount to be approved by the Court.  Agreement ¶¶ 1.35, 8.1.  These awards are subject to this Court's approval, which Plaintiff has moved for separately.  *See* Dkts. 23 & 34.  That motion is unopposed, and there were no objections to it. Payment of attorneys' fees, costs, and expenses is due within 21 days after entry of Final Judgment.  Agreement ¶ 8.2.

## IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v.*

8

*Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation

omitted).  Notice must clearly state essential information regarding the settlement,

including the nature of the action, terms of the settlement, and class members'

options.  *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297

F.R.D. 283, 292 (W.D. Ky. 2014).  At its core, "[a]ll that the notice must do is

fairly apprise the prospective members of the class of the terms of the proposed

settlement so that class members may come to their own conclusions about

whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d

615, 630 (6th Cir. 2007) (citation omitted).

That said, Due Process does not require that every class member receive

notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel*

*v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class

Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010);

*see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL

5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best

notice practicable" where combination of mail and publications notice reached

81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th

Cir. 2016) (finding that notice and claims processes were appropriate where 90.8%

of notices were successfully delivered to addresses associated with class members).

The notice plan here meets these standards, as it provided direct notice via a postcard or email to approximately 97.7% of the Settlement Class.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. Dkt. 20 at 6-7. That plan has now been fully carried out by professional settlement administrator JND Legal Administration ("JND"). Pursuant to the Settlement, Defendant originally provided JND with a list of 10,668 available names, addresses and emails of potential Settlement Class Members. Keough Decl. ¶ 6. After JND removed duplicates, the Class List contained 10,665 persons. *Id.* ¶ 7. JND successfully delivered the Court-Approved notice via postcard to 10,590 class members and via email to 33 class members. *Id.* ¶¶ 8-10. On May 29, 2020, Defendant provided JND with a list of 21,999 available names, address, and emails of potential Settlement Class Members. *Id.* ¶ 11. After JND removed duplicates, the Class List contained an additional 11,341 persons, for a total of 22,006 Class Members. *Id.* ¶¶ 12-13. JND successfully delivered the Court-Approved notice to 21,510 of those Class Members. *Id.* ¶¶ 13-17. Accordingly, the Court-approved notice successfully reached approximately 97.7% of the Settlement Class. Agreement ¶¶ 4.1(b); Keough Decl. ¶ 17.[3] These summary notices also directed

---

[3] JND also notified the appropriate state and federal officials pursuant to CAFA. Keough Decl. ¶¶ 4-5.

Settlement Class Members to the Settlement Website, where they were able to

submit change of address forms; access important court filings, including the

Motion for Attorneys' Fees; and see deadlines and answers to frequently asked

questions.  Agreement ¶ 4.1(c); Keough Decl. ¶¶ 18-21.

Given the broad reach of the notice, and the comprehensive information

provided, the requirements ot due process and Rule 23 are met.

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class

action settlements.  *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL

692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)).  At final

approval, the ultimate issue is whether the settlement is fair, reasonable, and

adequate.  Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th

Cir. 1983).  Courts within the Sixth Circuit recognize a strong "federal policy

favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see*

*also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is

"fair, reasonable, and adequate."  The Rule 23(e)(2) factors are:  (A) the class

representatives and class counsel have adequately represented the class; (B) the

proposal was negotiation at arm's length; (C) the relief provided for the class is

adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii)

the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider.  *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are:  "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *Id.*  As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A.    The Rule 23(e)(2) Factors Weigh In Favor Of Final Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

First, as explained above, Plaintiff and Class Counsel have adequately represented the class, including by securing the largest per class member recovery ever in a PPPA case.  *See supra* at Introduction.

Second, the Settlement was negotiated at arm's-length through mediation sessions with Judge Rosen, and is the result of a mediator's proposal by Judge

Rosen.  *See* Marchese Decl. ¶ 18.

Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23.  The Settlement provides an extraordinary recovery for the Settlement Class and does so without additional delay and uncertainty of litigation.  The Settlement also provides for Settlement Class Members to receive cash payments of approximately $110 without even filing a claim form. Agreement ¶ 2.1.  The attorneys' fees and costs provided for by the Settlement are consistent with that of other PPPA settlements in this District.  *See, e.g.*, *Perlin v. Time Inc.*, No. 16-cv-10635-GCS, Dkt. 55 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's PPPA claim); *Kinder v. Meredith Corp.*, No. 14-cv-11284-TLL, Dkt. (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's PPPA claim); *Moeller v. American Media, Inc.*, No. 16-cv-11367-JEL, Dkt. 42 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's PPPA claim).  And the Settlement Agreement is attached to the Marchese Declaration as Exhibit A.

Fourth, the proposed Settlement treats class members equitably relative to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement.  Agreement ¶ 2.1.

**B.     The Sixth Circuit's *UAW* Factors Weigh In Favor Of Final Approval**

**1.     There is No Risk Of Fraud Or Collusion (*UAW* Factor 1)**

The first *UAW* factor is "the risk of fraud or collusion."  *UAW*, 497 F.3d at 631.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no evidence of fraud or collusion.  *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

**2.     Litigation Through Trial Would Be Complex, Costly, And Long (*UAW* Factor 2)**

The second *UAW* factor is "the complexity, expense and likely duration of the litigation."  *UAW*, 497 F.3d at 631.  Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement."  *UAW*, 2006 WL 891151 at *17.  This case is no exception.  As discussed above, the Parties have engaged in document discovery, motion practice, and two private mediation sessions.  Marchese Decl. ¶¶ 6-17; 25-

14

27.  The next steps in the litigation would include depositions of the Parties, third-party discovery, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  Playboy had indicated that it would continue to assert numerous defenses on the merits.  More specifically, Plaintiff is aware that Playboy would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Playboy's agents), that Playboy also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Playboy "at retail," as is required to come under the scope of the statute.  Plaintiff and Class Counsel are also aware that Playboy would oppose class certification vigorously, and that Playboy would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Playboy could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.  Marchese Decl. ¶ 22.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be

accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *UAW* factor plainly weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (*UAW* Factor 3)

The third *UAW* factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties have conducted both formal and informal discovery into areas such as the class size, Defendant's purported notices of the disclosures, the recipients of Defendant's alleged unlawful disclosures, and Defendant's financial position. Marchese Decl. ¶ 6-7; 9-10; 13. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

### 4. Plantiff Would Face Real Risks If The Case Proceeded (*UAW Factor 4*)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Here, although Plaintiff's case is strong, it is not without risk. As aforementioned, Defendant has made clear that absent a settlement it will both move for summary judgment on various issues and vigorously contest class

certification.  *See* Marchese Decl. ¶ 22.  The risk of maintaining the class status

through trial is also present.  The Court has not yet certified a litigation Class and

the Parties anticipate that such a determination would only be reached after lengthy

discovery and exhaustive class certification briefing is filed.  Defendant would

likely argue that individual questions preclude class certification.  Defendant

would also likely argue that a class action is not a superior method to resolve

Plaintiff's claims, and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge

certification through a Rule 23(f) application and subsequently move to decertify,

forcing additional rounds of briefing.  Risk, expense, and delay permeate such a

process.  The proposed Settlement eliminates this risk, expense, and delay.  This

*UAW* factor thus favors final approval.

Against this backdrop of uncertainty, the benefits of the Settlement are

obvious and unmistakable:  it provides the largest per-class member recovery ever

in a PPPA case.  Marchese Decl. ¶ 19.  Specifically, the $3.85 million settlement

fund for the benefit of 22,006 Settlement Class Members will provide every

Settlement Class Member with approximately $110.  Previously, the largest per-

class member recoveries in PPPA cases were *Ruppel v. Consumers Union of*

*United States, Inc.*, No. 16-cv-02444, Dkt. 99 (S.D.N.Y.) (approving class action

settlement that paid approximately $109 per claimant) and *Moeller v. American*

17

*Media, Inc.*, No. 16-cv-11367, Dkt. 42 (E.D. Mich.) (approving class action

settlement that paid $105 per claimant).  Moreover, under this Settlement class

members do not need to file a claim in order to receive a cash payment.  Thus,

unlike in *Ruppel* and *Moeller*, every class member will receive a check for a cash

payment.

> ### 5.    Class Counsel And The Class Representative Support The Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class

representatives."  *UAW*, 497 F.3d at 631.  "The endorsement of the parties' counsel

is entitled to significant weight, and supports the fairness of the class settlement."

*UAW*, 2008 WL 4104329, at *26.  Here, both Class Counsel and the Class

Representative support the Settlement.  *See* Marchese Decl. ¶ 23.  This *UAW* factor

therefore favors final approval.

> ### 6.    The Reaction Of Absent Class Members Is Overwhelmingly Positive (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members."  *UAW*, 497

F.3d at 631.  In most class action settlements, a small number of opt-outs and

objections "are to be expected" and do not impact the Settlement's fairness.  *In re*

*Cardizem*, 218 F.R.D. at 527. (citations omitted); *see also Olden v. Gardner*, 294

F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no

qualms" with settlement where 29 out of 11,000 class members objected).  Here,

**zero** class members objected, and only six individuals (two of whom were not even class members, and one of whom did not sign the request for exclusion) requested to be excluded.  Marchese Decl. ¶ 32; Keough Decl. ¶¶ 24-27.  The lack of objections or exclusions is even more impressive when considering that approximately 97.7% of the Settlement Class received direct notice of the Settlement.  Keough Decl. ¶ 17.  This *UAW* factor therefore plainly weighs in favor of final approval.  *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

### 7.    The Settlement Serves The Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is "the public interest."  *UAW*, 497 F.3d at 631.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotations omitted).  Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class

19

action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of consumers' personal reading choices. In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of readers under the PPPA, especially because consumers are generally unaware that their privacy rights are being violated by these data sharing practices (here, Plaintiff alleged that Playboy secretly disclosed its customers' personal reading information). Thus, the alternative to a class action in this case would have been no enforcement at all, and Playboy's alleged unlawful conduct would have gone unremedied. This factor therefore supports final approval.

All of the *UAW* factors weigh in favor of approval, and the settlement on its face, is fair, reasonable, and adequate, and not a product of collusion. The Court should therefore grant final approval.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Final Approval of Class Action Settlement and enter Final Judgment in the form submitted herewith.

Dated:  July 31, 2020                    Respectfully submitted,

                                                         **MARK KOKOSZKI**,

                                                         By:_____*/s Joseph I. Marchese*_____
                                                         One of Plaintiff's Attorneys

                                                         Joseph I. Marchese
                                                         jmarchese@bursor.com
                                                         Philip L. Fraietta
                                                         pfraietta@bursor.com
                                                         **BURSOR & FISHER, P.A.**
                                                         888 Seventh Avenue
                                                         New York, New York 10019
                                                         Tel: 646.837.7150
                                                         Fax: 212.989.9163

                                                         Frank S. Hedin
                                                         fhedin@hedinhall.com
                                                         **HEDIN HALL LLP**
                                                         1395 Brickell Avenue, Suite 1140
                                                         Miami, Florida 33131
                                                         Tel: 305.357.2107
                                                         Fax: 305.200.8801

                                                         *Class Counsel*
                                                         Nick Suciu III
                                                         nicksuciu@bmslawyers.com
                                                         **BARBAT, MANSOUR & SUCIU PLLC**
                                                         6905 Telegraph Road, Suite 115
                                                         Bloomfield Hills, Michigan 48301
                                                         Tel: 313.303.3472

                                                         *Additional Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph I. Marchese, an attorney, hereby certify that on July 31, 2020, I served the above and foregoing ***Plaintiff's Unopposed Motion Final Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

                                                 */s Joseph I. Marchese*

                                                 Joseph I. Marchese